Mr. Mudd? Yes. Good morning, Your Honors. In determining whether or not to grant a duty drawback adjustment, the Department of Commerce looks at a two-pronged test that is applied. First it determines whether or not the duty drawback exemptions are directly linked to exports of the subject merchandise to the United States, and the respondent must show that imports were made to account for the claimed adjustments with respect to the exported merchandise. In the preliminary determination of this case, the Department of Commerce granted SR's request for a duty drawback adjustment. SR was able to show that the advanced license program in India met this two-pronged test. On remand, the Department of Commerce reopened the record in this case and requested additional information to show the linkage. The advanced license program in India requires detailed documentation for the manufacturers. In this case, SR was able to supply very detailed information for all of the invoices related to the advanced licenses in question. However, for one invoice, they were not able to supply complete documentation. For that invoice, the Department of Commerce refused to grant the duty drawback adjustment. And the burden is on you to link the seal to the advanced license, and they concluded you failed to meet your burden. On what basis are we here on the appellate court to reverse? I understand your question, Your Honor. I would submit, Your Honor, that they rejected the request for advanced license for this invoice not because we didn't do the linkage. It's because the documentation was different. We did supply documentation on the record for this one invoice that showed the shipping number for the invoice. We were able to tie that to the advanced license and to the invoice. The documentation is different. I don't deny that. But the linkage is there. Well, that's your conclusion that the linkage is there. Obviously, we can't discuss it specifically because there's some confidential information. Yes. You cited us. We can discuss that it has exactly down to the, let's see, what's the third decimal point behind? That's the 10,000th? Yes. To the 10,000th degree, you have the same tonnage. Correct. So we were able to tie the advanced license, the documentation for the advanced license has the shipping number on it, which has the quantity on it, which ties back to the invoice. And all we're saying is the Department of Commerce should be looking at that to provide the linkage. So that in a nutshell, your honors, is my argument concerning this point. Moving on to the date of sale. As this court is aware, in exporting steel in particular to the United States, there can be a significant lag time between the time that a contractor letter of credit is signed and when shipment and date. We've provided information that the time period was over two months. Selection of the date of sale can have significant impact on the margin found, in particular in situations where prices are fluctuating. In the preliminary determination of this case, the Department of Commerce, in a four-page, or four-paragraph, excuse me, discussion, explained why the letter of credit date was the appropriate date of sale in this case. The Commerce Health Regulation will create a presumption that it's the invoice date. That's correct. And to support use of another date, you bear the burden of satisfactory and compelling evidence. The material terms were fixed on that other date. That's correct. And so there was a finding against you here, saying we should reverse and say that you provided compelling evidence that the material terms were on another date? That's correct, Your Honor. And that is consistent with the court precedent. We were able to show that while there were deviations between the letter of credit date and the actual quantities that were shipped, in terms of overall tolerances within a letter of credit, and all these letters of credits in the contracts provide for a certain tolerance, plus or minus usually 10% or something along those lines. There was only one invoice, or one letter of credit, where the tolerance was exceeded, which involved less than 5% of the overall sales to the United States. In other cases similar to this, including in Newport Steel, and including in Cut the Length of Plate from Romania, the Department of Commerce has accepted that there will be slight deviations in these types of situations, and they've accepted it. Therefore, consistent with past precedent, we believe the Department of Commerce should have, and consistent with its own preliminary determination, accepted the letter of credit date as the date of sale in this case. Because we were able to show, and there have been a number of numbers that have been floating around in this case, and in particular exactly what percentage of the sales were impacted on this. I think there has been a bit of double counting that has occurred in this situation, because petitioners in this case have looked at the overall sales quantities, they've looked at the prices, and they've looked at individual line items. Specifications can include up to 30 to 100 different line items. And they were looking, I believe they have double counted. We were able to show that there was only one letter of credit where there was, that exceeded the tolerance, and this was less than 5%. I reserve my remaining time for rebuttal. Thank you. Thank you, Mr. Munn. Mr. D'Alessandris. Good morning, Your Honor. May it please the Court. As S.R. has stated, there are two issues on appeal. One is the duty drawback, and the other is the date of sale. Regarding the duty drawback issue, as Your Honor noted, there are... Can you just explain to me the play here? Do they have to prevail on both, or if we were to disagree with you on one of those issues, what happens? They're distinct issues, so if the Court were to overturn on either of the issues, it would presumably remand... Looking at the duty drawback, do you have JA 12294 in front of you? That's the listing of the 14 different shipping bill numbers, and of course we're talking about the 13th, and we're going to get the quantity, and we're going to get a number there, which we can't talk about because, I'm not sure why, but it makes me very uncomfortable that I can't talk about the central thing in the case. But one thing is clear, it gives us a quantity that is coming, of raw steel coming into India, right there at the number, and it's accurate down to the pound. They've got exactly tons, but they've got it down to the third decimal point, so it's accurate to the pound of steel. Now you've got, if we go to JA 12740, that's going to be the hot-rolled steel going out, and of course they have to link the raw steel coming in to the hot-rolled steel going out. If they do that, they get their drawback. And notice what they've done, they have identified to the pound, in this invoice 165, the exact same number, more than 2000 tons down to the pound. Now, to establish the linkage, one of the key documents is the shipping bill, and SR in its case brief to the Department of Commerce, and that is in the record also at 1291, admitted the shipping bill is the link between the export of subject merchandise and the import of items subject to the duty drawback. The shipping bill is not in the record. Now, I understand that they have, for all the other invoices, they have the authorization certificate, the letter from India releasing SR from the duty to pay, etc. But, why wouldn't that, when they have that for everything else, and they've obviously lost it for one, but they can point you to exactly the, down to the pound, coming in and going out, what's wrong here? What am I missing as to the reasonableness of their linkage? Well, Your Honor, if you turn to page 12286 in the record. I'm going to have it here. 12286. I'm getting there. 12286. Is that it? You're talking tab 37? Yes, it's almost there. 1, 2, 2. Okay, I made it. Okay, this is a listing of invoice numbers tied to an advanced license, and this is the advanced license that SR is inheriting, the duty drawback, that they're entitled to a duty drawback on the invoice that Your Honor pointed to at 12740, and there's an invoice number on this document. That invoice number is not here linked to the advanced license, and the shipping bill is not in the record, and also the bank realization is not in the record, and bank realization is also a key document in establishing that the exports were pursuant to the advanced license. SR does state in its reply brief that they've been... So what is your apprehension here? They have it for everything else. There seems to be a regular business practice here that they have followed that is dependable. They've lost some documents. What's your apprehension? Are you afraid they're hiding something? Well, Your Honor, the burden is on SR to create the record, and here they've submitted... And they've created a pretty effective record. They've done it for 14 others, 13 others. This is the 14th, and they've got it down to the pound, coming in and going out. What's your concern? Those are not the shipping bills, Your Honor. That's another document. It's a list of shipping bill numbers, but they're not tied to the other documents in the record. The shipping bill isn't there. The bank realization isn't there, and on this the point is they had that for everything else. There seems to be a regularity to the way this company does business. There's a reasonableness in their explanation. Well, we just don't have the records on this one. Are you afraid of something? Your Honor, it's their burden, and they did not meet that burden. The documents in the record do not establish. There's no linkage. You just need to have a linkage. Why isn't the pound down to the pound of steel enough? Again, Your Honor, that's just a list of shipping bill numbers. The shipping bill itself is not in the record. The bank realization is not in the record, showing that this was exported against the advanced license. It wasn't for everything else. It was for all the other 13 or 14. And the Commerce Department granted the duty drawback on those other 13 or 14, but in this instance, SR did not meet its burden of establishing that it was entitled to the duty drawback by record evidence, and the Commerce Department properly determined that they were not entitled to the duty drawback for this one invoice number, but gave them the duty drawback for all other exports. Turning to the date of sale issue, as the Court noted, the Commerce Department's regulation provides that the invoice date is the proper date, but that a party may establish by creating a record that another date would be more proper, and here SR argued that the letter of credit date would be more proper. Commerce initially went along with that, but requested a remand before the Court of International Trade, and on remand determined that there were multiple changes between the letter of credit date and the invoice date, and there's a calculation memo in the record. It's at page 15001 to 15004. The calculation memo details all of the changes between the letter of credit and the invoice date, and while SR states that there was only one change... The modifications were pretty minor after the letter of credit, right? Not in all instances, Your Honor. In multiple cases, there were changes beyond the tolerance of the stated tolerance, and the statements... SR asserts there was only one change, but the calculation memo, and again... Which ones were beyond the tolerance? Well, Your Honor, the ones that were most frequently cited in the briefing are the ones at page 11663 and 11679, where there were changes beyond the stated tolerance. There were also changes in price that are detailed in the calculation memo, and there are other invoices. There were three other letters of credit. The letter of credit numbers are in the calculation memo detailing the changes beyond the tolerances. And as the court noted, the burden is on... As we noted in our brief, the burden is on SR to establish that they were entitled to use a date other than the invoice date, in the letter of credit date, and we believe that the calculation memo, again at 15003 and 4, spells out numerous instances where there were changes between the letter of credit and the invoice date. The court has no further questions. Thank you, Mr. D'Alessandro. Ms. Thorsen? You'll take two minutes, right? I'm Ellen Schneider. I'm sorry. Excuse me, Ms. Schneider. And you'll take three minutes if I'm right. Yes, thank you. May I please report? First, I'd like to just address the duty drawback question. On the page that Your Honor referenced in the joint appendix at 12294, where there is a list of shipping bills, and there is the quantity that you mentioned... Yes, we're not challenging the authenticity of that list, but I just wanted to point out that that is a list of exports. This is not a list of steel rod coming in. This is a list of hot-rolled steel going out. And I just wanted to clarify that. So we don't have a requirement to export through this document. Now, the question has been raised, what did SR do here? Well, in the original administrative proceeding, they failed to make a complete record. The CIT found that they didn't establish that they had adequately substantiated their request for a duty drawback and sent it back. Now, on the remand, the Department of Commerce found that, indeed, the record was lacking. And they didn't say, all right, that's it. We're going to refuse your request for an adjustment. They gave them a second bite at the apple. They said, okay, here's what we want from you. We want proof that you've satisfied the conditions of your advance licenses, and we want all the documents connecting each claim duty drawback to exports under the advance license. So SR had an opportunity to provide that additional information. It got extensions of time to provide that information. And when it did so, it listed each advance license and each invoice that related to each advance license. It's not like they went to the agency and they said, look, we've lost our documents. They didn't mention it. And so that was the, if I can refer you to page in the joint appendix, 12286. This is where SR was required to say, okay, these are the particular invoices that were not listed. So for every other invoice that was in the record and affected by this adjustment, they came in with the bank realization and export certificate showing that they had the exports and connecting it to an invoice. And then they came in with the shipping bill connecting the exports to the advance license. For this document, for this invoice, we don't have anything. So we're left with guessing, or at least the agency was left with a guess. Should we hear from Ms. Thorsen? We have two minutes left. She wanted two minutes. Okay. Thank you, Ms. Snyder. You can finish up the time. Okay. So I just wanted to make the point that SR had two opportunities. It was SR's burden to create this record and it failed to do so. And there is simply no substantial evidence on the record to support that. And on the date of sale point, the only additional thing that I would say is that the record is replete with numerous instances involving several letters of credit. And I would refer your honors to the calculation memo that the agency produced, but also to pages 20, 21, and 22 in our brief, where we outline, based on each letter of credit and each change, the significance of these multiple changes. Thank you very much. Thank you, Ms. Snyder. There is a minute, Ms. Thorsen. Would you care to comment? Thank you, Your Honor. I'll be very brief. I'll just speak to the duty drawback issue. I think the standard of review should really inform what the court does with respect to this issue. It's SR's contention that even though they did not provide for this one invoice, the documentation that they themselves had represented to Commerce was necessary to support their claim. There's, in fact, some evidence on the record that perhaps a reasonable fact finder could use to find for SR. Now, I dispute that a reasonable fact finder could, on the basis of the evidence to which SR points, find for SR. But even if a reasonable fact finder could find for SR, that isn't the standard of review here. The standard of review is that SR must show that the agency's view of the record is not based on such evidence as a reasonable mind might accept as evidence. Why wouldn't a reasonable mind see that this is the same time frame and down to the pound and on documents signed by Indian officials? Why wouldn't a reasonable mind say, oh, well, that's obviously the same thing? Perhaps a reasonable mind could, but that isn't the standard of review. The standard of review allows that there might be more than two reasonable conclusions that can be drawn from the record evidence. In here, where SR failed to provide for this invoice, the documentation, such as the shipping bill, which it itself stated was a necessary and fundamental document for its claim, it's not out of reason at all for the agency to say, okay, my reasonable view of this record is that you haven't proven your claim. All right. Thank you. Mr. Larson. Mr. Lung. Thank you very much, Your Honors. And I agree with you on the confidential information. It's difficult for me as well. I just want to touch on a couple of points that were raised. In terms of the duty drawback, Mr. D'Alessandro said that there's no evidence that these were exported against the advance license. The page that we've been talking about, J012294, is the final page from the Ministry of Commerce that grants the exemption or finalizes the exemption under the advance license program. The advance license program allows Indian importers to import raw materials duty free, but at the end of production, they have to show that they've actually exported. This is the page where the Ministry of Commerce is doing that. And Ms. Snyder said that there's no evidence on material imports, but within this documentation, that is taken care of as well. So I do believe that the evidence on the record will support the claim that the duty drawback is allowed. In terms of the date of sale, the only thing I ask you to do is look carefully... Is there any explanation for why you have all of those documents we talked about earlier for the other entries and not for this one? I think you've explained it probably as well as I can. This was done on remand, I'll remind you. So it's several years after the fact, and the company was able to supply the information that they had at that time. So these were all paper documents that they maintained in the ordinary course of business, but when it came time to respond to the request for the Department of Commerce on remand, this was the information they did have. Will we have this problem in the future with everything digitized? Much less so. I can't tell you that much, having worked recently on similar issues in India. A lot of it has become digitized. But your answer to the question, though, on why this happened is your speculation. There isn't anything in here that explains why it didn't appear. The evidence, on the date that we were required to submit the information to the Department of Commerce, the company supplied the information that it had available to it. And there was obviously no reason for us to omit it, only to our disadvantage. In terms of date of sale, the only thing I ask you to do is pay close attention to what they're discussing. As I said, you can have, within any given specification or contract, up to 100 or more different lines. Each line can have deviations from it, and these will affect the overall quantity shipped under a given contract. And these will obviously affect the prices as well, because each line will have a different price. And in this case, while there were changes in different lines, it was only one letter of credit that involved a very small amount of the total quantity exported to the United States that was outside the tolerances. Therefore, based on the Department's precedent, we believe that the correct date of date of sale, in this case, was letter of credit. Unless you have other questions? Okay. Thank you very much. Thank you. That concludes our work this morning.